Daniel NESOM

v.

BROWN AND ROOT USA, INC. and Highland Insurance Company.

CIV. A. 90–1003–B.

United States District Court, M.D. Louisiana.

April 14, 1992.

*Caine v. Hardy,* 943 F.2d 1406, 1416 (5th Cir. 1991).

Daniel J. McGlynn, Baton Rouge, La., for Daniel Nesom.

Lauren A. Welch, McGlinchey, Stafford, Lang, New Orleans, La., for Unum Life Ins. Co. of America.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

This case requires the Court to determine whether plaintiff is entitled to disability benefits under a policy issued by UNUM Life Insurance Company (UNUM) to Brown and Root USA, Inc. (Brown and Root). For reasons which follow, the Court finds that plaintiff's motion for summary judgment should be granted.

The facts of this case are undisputed for purposes of this motion. Daniel Nesom suffered a work related injury in 1985, while working for Brown and Root, which rendered him permanently disabled. As a member of Brown and Root's employee welfare benefit plan, plaintiff was entitled to disability benefits under policy number 316874 issued by UNUM directly to Brown and Root. Nesom paid 50% of the premiums, with Brown and Root contributing the remaining 50% as an employee benefit.

Nesom pursued a worker's compensation claim in state court against Brown and Root. While the worker's compensation claim was pending, UNUM paid Nesom $1,248 in monthly disability benefits pursu-

ant to the disability policy.[1] Between May 22, 1986, and June 22, 1990, Nesom was paid a total of $61,152 in long-term disability benefits at the rate of $1,248 monthly. UNUM concedes plaintiff's eligibility to recover disability benefits since he has established he is totally disabled within the meaning of the policy.

On April 25, 1990, the state court rendered judgment in favor of Nesom in the sum of $39,902.90 for past due worker's compensation benefits. The monthly compensation award of $814.15 was based on an award of $187.88 per week multiplied by 52 weeks and then divided by 12 to equal a monthly worker's compensation benefit. The court found Nesom was entitled to temporary total disability benefits from May 23, 1986, to the time judgment was entered on April 25, 1990, and thereafter unless modified by the state court.

The amount of compensation awarded by the state court was calculated on the assumption that Nesom was entitled to receive disability benefits at the rate of $1,248 per month. Pursuant to Louisiana Revised Statutes 23:1225 C(1)[2], an employer is entitled to offset any disability payments against the worker's compensation payments because the disability benefit plan was funded 50% by the employer. The state court judgment specifically provided that the "weekly worker's compensation benefit of $187.88 is to be paid *in addition* to Nesom's disability income benefits of $1,248.00." (Emphasis added.)

The policy issued by UNUM allows the insurer to "deduct other income benefits" which include "the amount for which the insured is eligible under: (a) worker's or workmen's compensation law." In other words, after Nesom was awarded a retroactive worker's compensation judgment, UNUM claimed it was entitled to a credit for the $814.15 per month that UNUM paid while the worker's compensation claim was pending and which the state court found was owed by Brown and Root. UNUM maintains that it was required to pay Nesom the difference between his monthly worker's compensation benefit of $814.15 and his monthly disability benefit of $1,248.00, or a difference between the two benefits of $433.85 per month.

Since the worker's compensation judgment was rendered, UNUM claims it is entitled to an offset of $39,902.90 in a lump sum payment under the terms of the policy. Specifically, UNUM contends this sum should be treated as "other income" which may be offset against payments made to Nesom under the terms of the policy. Nesom has not paid UNUM for the alleged overpayment, and UNUM has begun recovering its overpayment by crediting the $39,902.90 to the monthly benefit of $433.85 that it presently owes. Once the overpayment is recovered, UNUM concedes that it owes Nesom a monthly benefit of $433.85 assuming he is disabled and there is no other income benefit offset.

Plaintiff claims that UNUM is not entitled to offset worker's compensation benefits against the disability benefit provided by UNUM to plaintiff because the worker's compensation insurer is offsetting its benefits based on what the plaintiff has received from the disability insurer. Nesom contends that the state court judgment

---

1. The plan provided that plaintiff is entitled to:

"60% (benefit percentage) of basic monthly earnings not to exceed the maximum benefit, less other income benefits."

Since plaintiff was receiving no other income benefits while the worker's compensation claim was pending, plaintiff was entitled to 60% of $2,080.00, which was determined to be his basic monthly earnings. The calculation resulted in a monthly benefit of $1,248.

2. La. R.S. 23:1225 C(1) provided at the time the state court rendered its judgment that:

If an employee receives remuneration from (a) benefits under the Louisiana worker's compensation law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and employer liable for payment of the worker's compensation benefit, so that the aggregate remuneration (a) through (d) of this Subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury.

awarded him a total of $2,055.88 per month, with UNUM paying $1,248 per month and Brown and Root paying $807.88 per month. In other words, plaintiff contends that if UNUM is entitled to an offset, *both* the disability benefit *and* the worker's compensation benefit would be taking offsets against a single fund due the plaintiff.

The parties agree that the facts necessary to decide this motion are not in dispute. The issues before the Court are legal in nature and require the Court to interpret the language of the policy in accordance with relevant law. It is well established that courts have the authority to review *de nova* the legal issues which arise from application and interpretation of employee welfare benefit plans.[3]

■ The standard under which the Court must proceed to review the issues in this case was set forth by the United States Supreme Court in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In *Pilot Life,*[4] the Court held that ERISA preempted an employee's common law claims against an insurer, and that Congress intended that the general preemption clause and civil enforcement provisions provide the exclusive remedy for disputes arising out of claims for benefits under all ERISA–regulated employee benefit plans.[5]

Since *Pilot Life,* the Fifth Circuit has consistently held that claims to recover benefits or for improper handling of insurance claims are barred by ERISA's preemption provisions.[6] In short, when beneficiaries seek to recover benefits from an ERISA plan, their exclusive remedy is provided by ERISA.[7]

■ Fundamental to a determination of whether ERISA applies to a claim for benefits is whether, in fact, the benefits are being claimed from an ERISA plan. In *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991), the Fifth Circuit set forth the test for determining whether a "plan" is an "employee welfare benefit plan" for purposes of ERISA. In order for an employee welfare benefit plan to exist, there are two requirements: (1) an intent to benefit employees, and, (2) providing these benefits as described in 29 U.S.C. § 1002(1) and (2).

It is clear that the plan at issue in this case is an ERISA plan within the meaning of the Act. The insurance policy was issued directly to Brown and Root for its employees. Brown and Root purchased the insurance to insure its workers against dis-

**3.** *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Pierre v. Connecticut General Life Ins. Co. of North America,* 932 F.2d 1552 (5th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991).

**4.** Justice O'Connor analyzed in detail the express preemption provision of ERISA and its sub-parts. The sections analyzed were § 1144(a), "the preemption clause"; § 1144(b)(2)(A), "the saving clause"; and § 1144(b)(2)(B), "the deemer clause."

The statutory scheme was summarized by Justice O'Connor as follows:

If a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted. § 514(a). The saving clause excepts from the pre-emption laws that regulate insurance. § 514(b)(2)(B). 481 U.S. at 45, 107 S.Ct. at 1552.

**5.** It should be noted that ERISA is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980), through which:

Congress set out to 'protect ... participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to federal courts' § 2, as set forth in 29 U.S.C. § 1001(b). *Pilot Life,* 481 U.S. at 44, 107 S.Ct. at 1551.

**6.** *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991); *Ramirez v. Inter–Continental Hotels,* 890 F.2d 760, 763 (5th Cir.1989).

**7.** 29 U.S.C. § 1132(a)(1)(B) provides:

A civil action may be brought—
(1) by a participant or a beneficiary—
(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. *See, also Degan v. Ford Motor Co.,* 869 F.2d 889, 893 (5th Cir.1989).

ability from both work related and non-work related illnesses and injury.

UNUM Policy No. 316874 meets the criteria of § 1002(1) of ERISA for a number of undisputed reasons. Brown and Root, Inc. is the policyholder who obtained and established the UNUM policy for its employees and is responsible for maintaining the policy by collecting 50% of the premiums from its employees and paying these funds together with its own 50% contribution directly to UNUM. The purpose of the plan is to provide long term disability benefits through the UNUM insurance policy to employees. Finally, the benefits sought and obtained by Nesom are the very benefits listed in the plan.

The actual "plan" in this case consists only of the disability policy. However, it is well established that an employee welfare benefit plan can consist of "disability plans funded through insurance policies."[8]

█ UNUM's contention that the plan is governed solely by ERISA is without merit. It is clear that the plan itself defers to state law. As noted earlier, the plan computes the insured's monthly benefit by multiplying the insured's basic pre-disability monthly earnings by 60% and by deducting other income benefits from that amount. However, "other income benefits" is defined as the "amount which you [Nesom] are eligible under: a. worker's or workmen's compensation law".

In this case, eligibility for worker's compensation was determined by the state court and set forth in the state court judgment. The state court judgment cannot be changed or modified by this Court. Because the UNUM offset provision refers to "eligibility" under state law, the attempted offset must be taken in accordance with the state court judgment. The judgment rendered by the state court gave the employer and its worker's compensation insurer a credit for disability payments issued by UNUM because of Brown and Root's 50% contribution of premiums for those benefits. If the worker's compensation insurer offsets disability benefits, and the

disability insurer offsets worker's compensation benefits, Nesom will receive substantially less than the benefits he is entitled to receive under the state court judgment.

The disability policy itself prevents such an inequity by requiring the state court relying on state law to determine the offset. In this case, there can be no such offset because Nesom's eligibility for and the amount of his worker's compensation is his receipt of full disability benefits under the UNUM policy. This conclusion is supported by page 24 of the Plan which provides:

Does this coverage affect worker's or workmen's compensation?

The policy is not in lieu of, and does not affect, any requirement for coverage by worker's or workmen's compensation insurance.

The Court construes the above language as another indication of the plan's intent to defer to state law to determine the amount of benefits to be paid the plaintiff. In other words, the "requirements" for coverage under Louisiana worker's compensation law are qualified by the offset provisions set forth in Louisiana Revised Statutes 23:1225 C(1). Inclusive in the term "requirements" are the qualifications on such obligations. Since the policy by its own terms does not affect these requirements, it does not affect any offsets which qualify or limit those requirements. To allow the offset proposed by UNUM would clearly affect the amount of plaintiff's worker's compensation benefits. Such an offset would also affect the employer's worker's compensation obligations under Louisiana law because the plaintiff is limited to $1,248 per month and UNUM paying $433.85 in disability benefits.

The more the worker's compensation insurer pays, the less the disability insurer pays. Thus, Brown and Root would receive virtually no credit for its contributions to the disability plan if the Court accepts UNUM's argument. For example, if Brown and Root had been cast in judgment for the entire $2,055.88 awarded by

---

**8.** *Gonzales v. Prudential Ins. Co. of America,* 901    F.2d 446, 452 (5th Cir.1990).

state court, UNUM would offset the $2,055.88 against the $1,248 it owes under the terms of the policy. To the extent that this result is possible, the definition of "other income" is at odds with the reference on page 24 of the Plan which discusses worker's compensation coverage. UNUM's interpretation of the offset provisions in the policy will often result in receipt of less but never more worker's compensation benefits than an injured worker is entitled. At best, the terms of the policy are ambiguous and inconsistent and should be construed in favor of the insured.[9]

If the disability policy is not in lieu of any requirement to pay the insured worker's compensation benefits, then the policy must be an *addition* to any benefits received. This conclusion is not only consistent with the state court judgment, but also parallels the terms of the policy.

UNUM asserts that Louisiana Revised Statutes 23:1225 C(1) is pre-empted to the extent that it does not permit the offset sought by UNUM. While it is true that ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any welfare benefit plan . . .",[10] the statute at issue does not meet the preemptive criteria of ERISA. It is not the statute which prevents the offset at issue; it is the terms of the policy issued by UNUM which does so. Louisiana Revised Statutes 23:1225 C(1) relates only to offsets that are available to employers for worker's compensation payments.

The fact that an offset is available in favor of the employer does not affect eligibility requirements for or benefits an employee receives from an employee welfare benefit plan. The statute only seeks to regulate obligations owed by employers to their employees for worker's compensation benefits. The legal relationship between the disability insurer and insured is neither affected nor regulated. The state court presumed such to exist and the offset in favor of the employer was based on that existence.[11]

There is no merit to the argument that plaintiff's claim is preempted by ERISA since plaintiff seeks the recovery of benefits due a participant under the terms of the plan.[12] Indeed, ERISA specifically permits a civil action for clarification of rights to future benefits under the terms of an ERISA plan.[13]

ERISA does not permit insurers to wield a pre-emption argument to shield themselves from having a court or an employee evaluate the terms and ambiguities of policies. In *Kunin v. Benefit Trust Life Ins. Co.*,[14] the Ninth Circuit held that the rule of *contra proferentum* [15] applies to ERISA plans regardless of whether it applies as a matter of uniform federal law or because federal law incorporates state law on this point.[16] The court found that the interpretation of an insurance policy falls within

---

9. *Garcia v. St. Bernard Parish School Bd.*, 576 So.2d 975, 976 (La.1991) ("Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation.")

10. 29 U.S.C. § 1144(a).

11. It must be noted that the uncontested facts reveal that UNUM was invited and encouraged to provide input into the outcome of the state court proceeding. Despite the efforts of plaintiff to obtain UNUM's participation in the worker's compensation proceedings, UNUM declined to take any action to protect its interests in those proceedings.

12. 29 U.S.C. § 1132(a)(1)(B).

13. *Id.*

14. 910 F.2d 534 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990).

15. "A typical statement of the rule is that if, after applying the normal principles of contractual construction,

the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted. The rule is based upon the principle of contract construction that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the drafter." 910 F.2d at 539 (citing A. Windt, INSURANCE CLAIMS AND DISPUTES § 602, at 281–82 (2d ed.1988)).

16. 910 F.2d at 540.

the regulation of the business of insurance which is saved from preemption.[17] Hence, the fact that there is an ERISA plan involved in the case does not prevent the Court from applying well established rules of contract interpretation.

The cases upon which UNUM relies to support its offset are clearly distinguishable from the case pending before this Court. In *Sampson v. Mut. Ben. Life Ins. Co.*,[18] the First Circuit held that an insurer was permitted under ERISA to offset worker's compensation benefits from disability payments. However, there is no indication that the policy at issue in *Sampson* relied upon state law to define "worker's compensation benefits." *Sampson* only confirms the general rule that a disability insurer may offset worker's compensation benefits in compliance with ERISA only if the policy provides for such an offset. However, it is not ERISA which provides the offset. It is the policy which must provide for the offset. UNUM's policy simply fails to unambiguously provide for the offset sought by UNUM in this case.

UNUM also relies on *McBarron v. S & T Industries, Inc.*,[19] wherein the Sixth Circuit held that the insurer may enforce a policy under an employee benefit plan permitting it to withhold all disability benefits so long as the insured employee is receiving worker's compensation benefits. In the UNUM policy at issue here, there is absolutely no provision for discontinuing benefits once a lump sum payment for worker's compensation is received by the insured. Although the policy suggests that social security benefits may give rise to a claim for reimbursement on page 16 of the policy,[20] there is no such provision for reimbursement of lump sum worker's compensation benefits. A fair reading of the policy reveals no intention on the part of the parties to require reimbursement for lump sum worker's compensation benefits paid for a time period when UNUM was paying Nesom his full disability benefits.

Since the policy does not clearly provide for such an offset, the Court finds that plaintiff is entitled to the past disability payments in the amount of $1,248 per month which have been withheld by UNUM. The Court further finds that UNUM is not entitled to offset past, present, or future worker's compensation payments as defined in the state court judgment.

▪ Plaintiff also claims that he should be awarded attorney fees incurred in this case. Under ERISA, the Court has discretion to award attorney fees to any party.[21] The Fifth Circuit has set forth the following factors which must be considered by the Court in making this determination: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party who is requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.[22]

▪ In this case, plaintiff sought to protect not only his rights under the disability plan but the rights of the employer who

---

17. 910 F.2d at 540, note 8.

18. 863 F.2d 108 (1st Cir.1988).

19. 771 F.2d 94 (6th Cir.1985).

20. Page 16 of the policy reads in pertinent part:
    This agreement states that you promise to repay us any overpayment caused by an award received under item 5.a.
    Item 5 on the preceding page is:
    The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or the Quebec Pension, or any similar plan or act; as follows:
    a) disability benefits for which:
      i. you are eligible; and
      ii. your spouse, child or children are eligible because of your disability;

21. 29 U.S.C. § 1132(g)(1); *Holder v. Prudential Ins. Co. of America*, 951 F.2d 89 (5th Cir.1992).

22. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980).

contributed to that plan. Plaintiff notified UNUM of the state court compensation case and invited it to participate in the worker's compensation proceeding in state court. UNUM refused to participate or otherwise protect its interest in the state court case. The fact that the disability plan deferred to state law in defining "other income benefits" should have been impetus enough for UNUM to asserts its rights in the state court case. The state court judge issued its judgment in favor of plaintiff. UNUM has ignored the terms of the policy which it prepared thereby leaving the plaintiff with no present disability benefits and decreased worker's compensation benefits.

The Court believes that the defendant has had ample opportunity to reevaluate its position. This type of case is the very type of case in which attorney's fees should be awarded. A disabled employee has been forced to resort to court process to obtain the compensation and disability benefits to which he is entitled under state and federal law and the policy issued by the defendant. A decision to award attorney's fees under the facts of this case should deter others from denying benefits under similar cases in the future. The defendant is able to pay the fees in this case.

Plaintiff shall have 10 days to submit an itemized statement of attorney's fees incurred herein or to submit a stipulation agreed to by the defendant as to the amount of the fees to be awarded. The defendant shall have five days thereafter to file an opposition to the amount of attorney's fees.

Therefore:

IT IS ORDERED that plaintiff's motion for summary judgment be and is hereby GRANTED.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be and is hereby DENIED.

Plaintiff shall have 10 days to submit a proposed judgment in accordance with this opinion with a blank space for attorney's fees.

Plaintiff shall also have 10 days to submit an itemized statement of attorney's fees or a stipulation agreed to by the defendant on the amount of attorney's fees to be awarded herein. The defendant shall have five days after plaintiff files his statement of attorney's fees to file an opposition thereto.