James G. SNEAD, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

Civ. A. No. 92–542–A.

United States District Court, E.D. Virginia, Alexandria Division.

June 22, 1993.

Thomas D. Hughes, IV, Alexandria, VA, Walter M. Schey, San Francisco, CA, for plaintiff.

James L. Nolan, Washington, DC, for defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

Plaintiff James G. Snead ("Snead") filed this action against Defendant UNUM Life Insurance Company of America ("UNUM") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1992). Snead claims entitlement to present and future disability benefits under the terms of group long-term disability Policy No. 14133 ("the policy") issued by UNUM to Snead's employer, American Pecco Corporation ("American Pecco"). UNUM seeks to offset workmen's compensation benefits paid to Snead by a third party against any benefit payments UNUM is required to make to Snead. Also, in order to monitor Snead's disability status, UNUM requests that a physician periodically examine

Snead at Snead's expense. Finally, UNUM opposes Snead's request for counsel fees.

For reasons set forth below, the Court finds that UNUM is entitled to offset workmen's compensation benefits paid by a third party against UNUM's disability payments to Snead, that Snead must periodically submit to a physical exam at his own expense, reporting the exam results to UNUM, and that Snead is entitled to recover his counsel fees.

## I. Findings of Fact

After reviewing the pleadings, the evidence, arguments of counsel, and authorities, the Court finds the following facts:

1. Plaintiff James G. Snead is a resident and citizen of the Commonwealth of Virginia.

2. Defendant UNUM Life Insurance Company of America is a life insurance company organized under the laws of Maine with its principle place of business in Portland, Maine. Snead's employer, American Pecco, purchased an employee welfare plan, from UNUM, to provide long-term disability benefits for its eligible employees from UNUM (Policy No. 14133). The policy is an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1001 *et seq.* (1992).

3. On June 27, 1987, Plaintiff was working as a serviceman on a personnel hoist to realign rollers. The hoist operator took the control box onto the top of the cage. Snead was injured when the operator laid down the controls, and a starting mechanism was activated. The starting mechanism caused the hoist to move upwards crushing Snead's arm between rollers. (Def.Ex. 34.)

4. Plaintiff has permanently lost all occupational use of his right hand and arm.

5. Dr. Baugher, an orthopedic surgeon, wrote UNUM on May 4, 1989, "It is fairly clear that based on his education, etc. that Mr. Snead is totally disabled." (Pl.Ex. 9.) On September 24, 1991, Dr. Baugher wrote UNUM, "Mr. Snead, certainly, is unable to perform his previous job with the damaged hand and has a significant permanent impairment." (Pl.Ex. 11.)

6. Plaintiff submitted to an independent medical exam performed by Dr. Lee Voulters, a neurologist, on June 16, 1989. Dr. Voulters found the following:

> Neurological examination now shows evidence of significant wasting, weakness, and numbness involving the right hand and forearm. This gentlemen has clearly suffered extensive nerve injury involving the median and ulnar nerves of the right arm. There is likely some radial nerve involvement, although there has been transposition of the ligaments making it difficult to assess this. In any event, this gentleman has been left with a right hand with very limited usefulness.

(Pl.Ex. 13.)

7. Dr. E. Davis Martin, Jr., a vocational expert, found, after examining Snead's claim, that he is not able to perform his usual occupation because of his physical limitations. He also found that Snead did not have any transferable skills due to the specialized nature of his previous employment. (Pl.Ex. 41.)

8. Snead filed a claim for workmen's compensation benefits with the Department of Workmen's Compensation Industrial Commission of Virginia on July 1, 1987. (Def.Ex. 34 at 22.)

9. Beginning June 28, 1987, Fireman's Fund Insurance Company paid workmen's compensation benefits to Snead at a rate of $326 per week, based on Snead's average wage of $732 a week.

10. Snead filed a third party action against HCB Contractors for injuries sustained as a result of his accident. *Snead v. HCB Contractors, Inc. et al.*, No. K87–2022 (D.Md.1987). (Def.Exs. 7 and 8.)

11. In August 1989, Snead settled with HCB Contractors and Random Construction Company for $700,000.00. After payment of medical expenses, fees and costs, Snead netted $410,000.00 from the settlement. (Def.Ex. 6.) One of the costs that the settlement funds paid for was a $50,000.00 workmen's compensation lien. *Id.* Snead also executed releases to Random Construction Company, Aetna Casualty Company, and HCB Contractors, Inc. (Def.Ex. 7 and 8.)

12. Fireman's Fund Insurance Company and Snead filed an agreed statement of facts with the Workmen's Compensation Industrial Commission of Virginia on September 25, 1989. The statement of facts indicates weekly compensation payments of $326 for the period of June 28, 1987 through August 31, 1989, totalling $39,236.85. The agreed statement also notes that

> Mr. Snead received $410,000.00 from the third party carrier. No further compensation payments will be made until claimant has exhausted the net proceeds of the settlement at the rate of $326.00.

> The insured and claimant agree that the insured shall continue to pay all related medicals for five years.

(Def.Ex. 34 at 12.)

13. Snead applied to UNUM for disability benefits on or about September 10, 1987. (Def.Ex. 1 at 285.)

14. On November 10, 1987, UNUM approved Snead's claim for long-term disability benefits. UNUM subsequently paid long-term disability benefits to Snead from September 26, 1987 to September 26, 1989 (twenty-four (24) months), for a total payment of $32,081.45. (Def.Ex. 1 at 4.) For the period of September 26, 1989 to November 26, 1991 (twenty-six (26) months), UNUM paid long-term disability benefits to Snead under the rehabilitative employment provisions of the policy. Beginning June 17, 1991 through November 26, 1991, UNUM paid benefits to Snead under the policy's reservation of rights provision, because it was investigating Plaintiff's continued entitlement to benefits. (Def.Ex. 1 at 3, 4, 97, 101.)

17. By letter dated November 27, 1991, UNUM informed Snead that no further benefits were payable under the policy, because review of his file indicated that he was no longer totally disabled. The letter also indicated that UNUM was closing his file. (Def.Ex. 1 at 21.)

18. On December 5, 1991, Walter Schey, Esq., counsel for Snead, wrote UNUM to request a review of the November 27, 1991 denial of benefits. (Def.Ex. 1 at 16.)

19. After exhausting his administrative remedies, Snead filed this action pursuant to the ERISA, 29 U.S.C. § 1132(a)(1)(B) and § 1451 (1992), on April 17, 1992.

20. UNUM filed a Motion for Summary Judgment on July 29, 1992. On August 28, 1992, the Court denied UNUM's motion and remanded the matter to the UNUM Plan Administrator for full and fair review of Snead's disability claim. The Court set a status hearing for September 25, 1992. At the status hearing, UNUM conceded that Snead was totally disabled.

21. This matter came to trial on October 27 and 28, 1992. At trial, two workmen's compensation law experts, John C. Duncan, testifying for UNUM, and Joseph Trapeni, testifying for Snead, agreed that, before ruling on Snead's claim, the Virginia Workmen's Compensation Commission should have requested a medical report, a new statement of facts, and letters from the lawyers involved in the third party settlement explaining the details of the settlement.

23. The Virginia Workers' Compensation Commission has the power to terminate or suspend awards where there are no payments, or to leave the award open where there are payments. (Testimony of Trapeni.) The Virginia Workers' Compensation Commission should have determined "one full recovery" for Snead and discharged Fireman's Fund Insurance Company from further liability to Snead. (Testimony of Duncan.)

## II. Standard of Review

The standard of review for a denial of benefits determination is set forth in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Fourth Circuit recently stated:

> [t]he Supreme Court decided that a district court should review *de novo* a plan administrator's denial of benefits under § 1132(a)(1)(B) of ERISA, unless the benefit plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan."

*Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1021 (1993) quoting *Firestone,* 489

U.S. at 115, 109 S.Ct. at 956, 103 L.Ed.2d at 95.

On November 27, 1991, UNUM informed Snead that it was denying further benefits to him because review of his file indicated that he was no longer totally disabled. The policy in question here does not expressly delegate discretionary authority to a plan administrator or a fiduciary. Accordingly, the Court will conduct a *de novo* review of UNUM's decision to deny benefits to Snead, and UNUM's decision to offset third party workmen's compensation benefit payments to Snead against any disability payments UNUM must make to Snead.

### III. Discussion

▮ As noted in the findings of fact, Fireman's Fund Insurance Company paid Snead $326 on a weekly basis in workmen's compensation benefits beginning on June 28, 1987 (the date of the accident) until August 31, 1989.[1] On August 14, 1989, Snead settled his lawsuit against HCB Contractors, Inc. and Random Construction for $700,000.00. Fireman's Fund was reimbursed for the benefits it paid to Snead from the proceeds of this third-party settlement. After paying attorney's fees and other costs, Snead retained $410,000.00 from the settlement. Snead also retained the workmen's compensation benefits Fireman's Fund previously paid to him. On November 27, 1991, approximately two years later, UNUM denied payment of any future disability benefits to Snead. After UNUM's denial of benefits, Snead exhausted his administrative remedies and filed this action. As previously stated, this Court remanded the matter to the UNUM plan administrator. After the remand, UNUM conceded Snead's disability. UNUM now argues that the workmen's compensation payments received by Snead should be applied to reduce the monthly benefit that UNUM must pay to Snead. To support its argument, UNUM proffers the following policy terms:

MONTHLY BENEFIT REDUCTION: If the Insured Employee is entitled to other income benefits, as defined below, for the same period of disability for which a Monthly Benefit is payable in accordance with the terms of this Policy, then the amount of such Monthly Benefit which is payable hereunder shall be reduced by the amount of these other income benefits.

Other income benefits, referred to above, include:

(1) any amount payable under any Workmen's Compensation Law, Occupational Disease Law, or any other legislation of similar purpose, . . .

(Pl.Ex. 1 at 28.)

According to UNUM's interpretation of the above language, UNUM should have reduced benefit payments it made to Snead from September 26, 1987 to September 26, 1989 by the amount of money that Fireman's Fund paid to Snead during that same time period. UNUM, therefore, seeks to offset the amount of workmen's compensation benefits paid to Snead by Fireman's Fund against disability benefits UNUM must pay to Snead. UNUM further asserts that it is entitled to this offset for five hundred (500) weeks, which is the maximum allowable period for workmen's compensation under Virginia law. Va.Code § 65.2–500(D) (Michie 1991).

Snead, on the other hand, argues that he is owed the full amount of his disability benefits, and that UNUM cannot reduce benefit payments to him by offsetting previous workmen's compensation benefits.

Only one federal appeals court has addressed the issue at hand. *Sampson v. Mutual Benefit Life Ins. Co.*, 863 F.2d 108 (1st Cir.1988). In *Sampson,* the worker suffered an injury which disabled him for approximately three years. During the period of his disability, Sampson was paid both disability benefits by the defendant Mutual Benefit Life Insurance Company (Mutual Benefit) and workmen's compensation through his employer's insurance carrier. In order to offset the workmen's compensation benefits Sampson received for his loss of time, Mutual

---

1. Fireman's Fund paid Snead for approximately one hundred and twenty (120) weeks. Under Virginia law, Fireman's Fund's obligation to pay benefits to Snead ceases after five hundred (500) weeks. Va.Code § 65.2–500(D) (Michie 1991).

Benefit withheld $19,147.50 from its disability payments to Sampson. The district court approved of Mutual Benefit's decision to offset, and granted summary judgment to Mutual Benefit. In affirming the district court, the First Circuit noted that

> to allow Sampson to recover the loss-of-time offset from Mutual would violate the principle underlying both the Mutual policy's offset provision and the reimbursement provisions of the Massachusetts Workers' Compensation Law, for it allows Sampson to recover twice for the same loss.

*Sampson*, 863 F.2d at 110–11; *see also Nesom v. Brown and Root USA, Inc.*, 790 F.Supp. 123, 129 (M.D.La.1992) (*Sampson* confirms the general rule that it is permissible for a disability insurer to offset worker's compensation benefits under ERISA only if the policy provides for such an offset).

Snead contends that the *Sampson* result is illogical, and urges this Court not to follow it. While *Sampson* is merely persuasive authority, this Court is inclined to follow its direction.

In its decision in *Sampson*, the First Circuit focused on the language of Mutual's policy offset provision. Here, UNUM presents its policy's offset provision as its rationale for reducing Snead's monthly benefit. The relevant language of the policy offset provision reads:

> If the Insured Employee is entitled to other income benefits ... for the same period of disability for which a Monthly Benefit is payable ... then, the amount of such Monthly Benefit which is payable hereunder shall be reduced by the amount of these other income benefits.

The Court finds, as did the court in *Sampson*, that the plain language of the policy provision permits the insurance company to offset disability benefits against workmen's compensation benefits previously paid to the disabled employee. Thus, UNUM is entitled to offset workmen's compensation benefits paid to Snead by Fireman's Fund against disability payments UNUM must pay to Snead.

Snead relies on *Sheris v. Travelers Ins. Co.*, 491 F.2d 603 (4th Cir.), *cert. denied*, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974) for the proposition that when an employee sues the person responsible for his work-related injury, the employer is entitled to reimbursement for compensation already paid and to be discharged from liability for future payments to the extent the judgment against the wrongdoer is sufficient to satisfy the compensation award. The balance may be retained by the employee, and the employer's workmen's compensation carrier stands in the shoes of the employer. *Id.* at 605. *Sheris* is factually inapposite to this dispute because the primary issue therein is the apportionment of attorney's fees between a workmen's compensation carrier and the administratrix of an estate who recovered for the wrongful death of an employee. *Id.* at 604. The *Sheris* court's conclusion, however, supports UNUM's, not Snead's, position because it sanctions reimbursement of the workmen's compensation carrier.

Snead further argues that if UNUM is permitted to offset, he will have received no workmen's compensation recovery. He reasons that the third party settlement, from which Fireman's Fund was reimbursed, failed to provide specific funds for reimbursing the workmen's compensation insurer. The Court finds this argument unpersuasive. Here, as a result of the third party settlement, Fireman's Fund was reimbursed for the benefits that it paid to Snead and was relieved from liability for any future benefit payments. Snead retained $410,000 from the third party settlement, and kept the workmen's compensation benefits previously paid to him by Fireman's Fund. Snead, therefore, received one full payment of workmen's compensation benefits, and he should not be allowed to recover twice for the same loss. *Sampson*, 863 F.2d at 110–111. To refuse UNUM the offset, and allow Snead to retain the workmen's compensation benefits would fly in the face of the policy American Pecco entered into with UNUM.

## IV. Future Medical Examinations

■ The next question before the Court is whether UNUM or Snead should pay for

Snead's future medical examinations. Policy No. 14133 states as follows:

> When proof is received that an insured employee is totally disabled as the result of sickness or injury and requires the regular attendance of a legally qualified physician, the Insurance Company will pay a monthly benefit to the insured employee after completion of the elimination period. This monthly benefit will be paid as long as total disability continues provided that proof of continued total disability is submitted *at the insured employee's expense*, to the Insurance Company upon request . . .

(Pl.Ex. 1 at 12) (emphasis added).

"Where the terms of [a] contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." *S.C. Nat. Bank v. Atlantic States Bankcard Assoc.*, 896 F.2d 1421, 1426 (4th Cir.1990). The Court finds that the terms of the contract are not ambiguous. Although Snead argues that any future medical exams should be at UNUM's expense, the contract at issue states that UNUM will pay a monthly benefit as long as, "proof of continued total disability is submitted *at the insured employee's expense*." (Pl.Ex. 1 at 12) (emphasis added). The clear meaning expressed by the contract terms dictate that Snead must pay for any future medical exams. Accordingly, the Court finds that all future medical exams related to monitoring Snead's disability status shall be at Snead's expense.

## V.  Attorney's Fees

■   Snead seeks to recover his attorney's fees and costs in connection with the prosecution of this action. UNUM opposes this request.

Snead brought this action under 29 U.S.C. § 1132 and § 1451. Subsection (e) of § 1451 provides:

> In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such

action, including reasonable attorney's fees to the prevailing party.

The Court finds that Snead is totally disabled within the meaning of the policy, and is therefore the prevailing party under § 1451(e).[2] In *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217 (4th Cir.1990), the Fourth Circuit adopted a five-factor test to guide the district court's exercise of discretion in awarding attorneys' fees under ERISA. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (1993). The five factors are:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Id.* (quoting *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217 (4th Cir. 1990) quoting *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)). This approach is not a strict test, in fact it is not necessary that all factors weigh in favor of granting attorneys' fees. *Quesinberry*, 987 F.2d at 1028. The Fourth Circuit emphasized that ERISA vests the district courts with discretion in this area and noted that these factors provide a basis for reviewing whether the district court's decision to award attorneys' fees was an abuse of discretion. *Id.* at 1029.

The Court will apply each *Reinking/Quesinberry* factor, in turn, to Snead's request for attorneys' fees. The Court finds that the "bad faith factor" weighs heavily in favor of awarding attorneys' fees to Snead. UNUM

---

**2.**  ERISA also provides that "the court in its discretion may allow a reasonable attorney's fee...." ERISA § 502(g), 29 U.S.C. § 1132(g). ERISA therefore places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028 (1993).

boldly suggests that Snead's conduct in this case boarders on bad faith, and reminds the Court that bad faith behavior precludes a party from obtaining counsel fees and costs. The Court finds that UNUM's conduct, however, not Snead's, borders on bad faith. For example, Snead filed his application for benefits with UNUM in September, 1987, promptly providing UNUM with all necessary information to process his claim, but UNUM resisted his application. UNUM, in fact, delayed processing Snead's claim until it was in receipt of several letters from Walter Schey, Esq., counsel for Snead, threatening a law suit. Furthermore, UNUM's file contains a claim referral dated July 5, 1989, revealing the following comment:

> Bryan, CLMT's experience is a lot of the same which would prevent him from working—You will pay to at least 24 mos—refer to Ann Marie for a transferable skills assessment—no need to refer to Kaye—We need to see if we can deny 24 mos. Thom 7/11/89.

(Pl.Ex. 17.) Despite this July, 1989 claim referral note, UNUM did not conclude that Snead was totally disabled until September 1, 1992, after this Court remanded Snead's application to the Plan Administrator. The UNUM file also contains information indicating that a transferable skills analysis was performed on Snead in August, 1989, and it concluded that Snead was not eligible for other gainful employment.

As to the second factor, ability to satisfy an award, UNUM has the financial ability to satisfy an award of attorney's fees to Snead. The "deterrence" factor weighs in favor awarding attorney's fees to Snead, because such an award may discourage other insurance companies from treating claimants in a similar discourteous manner.

The fourth factor the Court must apply is whether Snead sought to benefit all plan participants or resolve a significant ERISA question. This litigation centered around a significant ERISA question, whether an insurance company is entitled to offset workmen's compensation benefits against disability payments, which only one federal appeals court has previously addressed. While Snead may not have intended to directly benefit all plan participants, resolution of this dispute may benefit other plan participants in the future. As to the fifth factor, the relative merits of the parties' positions, Snead is the prevailing party under § 1451(e), yet UNUM is entitled to offset its disability payments by the amount of workmen's compensation benefits already paid to Snead.

After examining the *Reinking/Quesinberry* factors, the Court finds that the first four factors weigh in favor of awarding counsel fees to Snead. Accordingly, Snead is entitled to counsel fees under 29 U.S.C. § 1451(e).

### VI. Conclusions of Law

The Court makes the following conclusions of law:

1. that this Court has jurisdiction pursuant to ERISA, 29 U.S.C. § 1001 (1992), *et seq.*;

2. that UNUM properly calculated Plaintiff's monthly disability benefits;

3. that Plaintiff is not entitled to recover any workmen's compensation reductions taken by UNUM. UNUM has overpaid Plaintiff $37,799.42 for the period from September 26, 1989 through November 26, 1991;

4. that UNUM may offset this overpayment against present and future monthly benefit payments to Snead;

5. that Plaintiff's monthly total disability entitlement is $1,348.78. That figure includes an appropriate reduction for workmen's compensation benefits already paid to Snead. This reduction shall continue until five hundred (500) weeks from the date of the injury;

6. that in order to remain eligible for benefits, Plaintiff must periodically submit proof of disability to UNUM at his own expense;

7. that Snead is entitled to recover his counsel fees and costs in connection with this action.

An appropriate order shall issue.

*ORDER*

In accordance with the accompanying Memorandum Opinion, it is hereby OR-DERED:

(1) that judgment is hereby entered in favor of UNUM Life Insurance Company of America against the Plaintiff James G. Snead. Plaintiff's complaint is DISMISSED with prejudice;

(2) that Plaintiff shall submit his application for counsel fees and costs within fifteen (15) days of the date of entry of this Order;

(3) that Defendant UNUM Life Insurance Company of America shall submit its opposition within (30) days of the date of entry of this Order.