In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1127

Paul J. Wyatt,

Plaintiff-Appellee,

v.

UNUM Life Insurance Company of America,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 8228--David H. Coar, Judge.


Argued May 30, 2000--Decided August 7, 2000


Before Posner, Coffey and Kanne, Circuit Judges.

Kanne, Circuit Judge.  An insurance dispute arising out of a tragic incident that left Paul J. Wyatt unable to work requires that we decide whether UNUM Life Insurance Co. of America wrongly withheld benefits from Wyatt in violation of federal law. The district court held that UNUM was not entitled to offset the benefits it owed Wyatt against benefits he had been receiving from another insurance policy and issued summary judgment in Wyatt's favor. UNUM, believing that its contract with Wyatt permitted such an offset, appealed. Because the dispute concerns an employee-benefit plan governed by the Employee Retirement Income Security Act, 29 U.S.C. sec. 1001 et seq., jurisdiction rested in the district court as a federal question under 28 U.S.C. sec. 1331. Agreeing that Wyatt's policy with UNUM did not permit the offset UNUM claimed, we affirm the district court's order.

I.  History

    The facts of this case are simple. Paul Wyatt worked for many years for William Blair & Co., holding the position of partner in the firm. In December 1992, while on a business trip, Wyatt was robbed and beaten, leaving him permanently disabled. At the time, Wyatt was covered by two insurance policies, both of which were voluntary and purchased by Wyatt. The UNUM policy provided

long-term disability benefits calculated at 60 percent of the insured's monthly earnings, less "other income benefits" received from other sources. The UNUM policy defined "other income benefits" as:

1.          The amount for which the insured is eligible under:

a.  Workers' or Workmen's Compensation Laws;

. . .

3.          The amount of any disability income benefits for which the insured is eligible under:

a.  any group insurance plan.

. . .

Wyatt also chose to purchase coverage under a Workers Compensation and Employers Liability Policy issued by Federal Insurance. This policy provided "voluntary compensation insurance" identical to benefits under the workers compensation law, although Wyatt was not subject to the Illinois Workers' Compensation Act, 820 Ill. Comp. Stat. 305/1 et seq. After his injury, Wyatt applied for benefits under both policies. He began receiving benefits from Federal in the amount of $670 per week. Later, UNUM approved his application for benefits under its policy, subject to an offset of $670 per week that he was getting from Federal.

On March 19, 1996, Wyatt reached a settlement with third parties for his injuries in the amount of $4 million. The Federal policy provided that any recovery from a third party would offset the amount of benefits Federal would pay. Specifically, the Federal plan provided that "[i]f the persons entitled to the benefits of this insurance make a recovery from others, they must reimburse us for the benefits we paid them." Therefore, the parties agree that Federal did not owe Wyatt anything under his policy until the $4 million is exhausted. Pursuant to this condition, Wyatt reimbursed Federal for the amount of the benefits Federal had paid to him between 1992 and 1996. Furthermore, Federal notified Wyatt that future payments were "suspended until exhaustion of Mr. Wyatt's [$4 million] settlement."

Wyatt requested UNUM discontinue the $670 offset against his benefits because he was no longer eligible for benefits under the Federal policy. UNUM responded that the offset remained appropriate because Wyatt was still eligible for the Federal benefits. The parties then disagreed as to whether Federal's benefits were properly

considered workers compensation benefits as defined by the UNUM policy. Wyatt contended that the Federal benefits were not paid under "Workers' or Workmen's Compensation Laws," since those laws did not encompass Wyatt as a partner in the firm. UNUM countered that, even so, the Federal plan qualified as "any group insurance plan," for which Wyatt was still eligible.

Wyatt filed a one-count complaint for declaratory relief in the Circuit Court of Cook County, Illinois, and UNUM removed the case to federal district court. After cross-motions for summary judgment, the district court held that Wyatt was not eligible for benefits under the Federal policy and ordered UNUM to pay Wyatt $116,133.20 in retroactive benefits, prejudgment interest and attorneys' fees.

II.  Analysis

On appeal, UNUM challenges the district court's finding that Wyatt was not eligible for benefits under the Federal policy and the award of attorneys' fees. We review a district court's grant of summary judgment de novo. See Quinn v. Blue Cross and Blue Shield Ass'n, 161 F.3d 472, 475 (7th Cir. 1998). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The district court, relying on Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), correctly ascertained its standard of review over UNUM's decision to deny benefits as de novo. Firestone provides de novo review for all cases related to the denial of benefits under ERISA, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 115. In cases where the administrator has discretionary authority, the district court must review their decision under the more deferential "arbitrary and capricious" standard. See Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1107 (7th Cir. 1998). The issue presented here centers on whether Wyatt remains eligible under the Federal plan, over which UNUM has no discretionary authority. Therefore, the district court correctly found that de novo review was appropriate.

A.  Wyatt's Eligibility Under the Federal

Policy

The question presented is whether Wyatt remained "eligible" for benefits under the Federal plan after he received the third-party settlement. It is uncontested that Wyatt will not receive any monetary payments from Federal until he exhausts the $4 million settlement, which would take roughly 5,970 weeks, or 115 years, from December 1992. In Federal's terms, the payments are "suspended" until that time.

UNUM contests strongly that one can still be "eligible" for benefits that one will, undisputedly, never receive, and that the cessation of payments to Wyatt by Federal is merely a "fiction" that we should disregard. In this view, Federal is still making payments to Wyatt, but Wyatt is immediately paying them back the same amount. Rather than engage in this routine every week, Federal and Wyatt agreed that Federal would stop making payments at all. UNUM asks us to look past this arrangement of convenience, this "fiction," to the reality that Wyatt is still eligible for payments from Federal.

We think this is a strange understanding of the word "eligible." We agree that Wyatt is still covered by the policy, in that the policy has not been cancelled or voided. This is a far cry from saying he is eligible to receive payments. According to one definition, eligible means "entitled to something." Webster's Third New International Dictionary 736 (3d ed. 1986). The Federal plan indicates that Wyatt must pay Federal back for any money he received from third parties. He therefore is not entitled to anything from Federal since he must immediately give back anything they paid him. The UNUM policy directs us to the "amount of any disability income benefits for which the insured is eligible." (Emphasis added.) Reading "eligible" as "entitled," it becomes obvious that the amount to which Wyatt is entitled is zero. UNUM's interpretation that one can be eligible to receive something that one has no right to possess in any sense, is clearly wrong.

Federal's use of the term "suspend" might reflect Federal's view that Wyatt remained eligible, but only as to future payments. Sometime, perhaps in the 22nd century, Wyatt would again be entitled to a weekly benefit, so it could not be said simply that Wyatt was, in all circumstances, "ineligible" under the Federal plan. Thus Federal suspended payments until he again would be due to receive a payment that he would not be bound to immediately give back, rather than declare with finality that Wyatt is

ineligible for benefits, either presently or in the future.

UNUM points to three cases from other courts that purportedly hold that, in the interest of preventing double recoveries, insured parties remain "eligible" for benefits they are required to reimburse. See Sampson v. Mutual Benefit Life Ins. Co., 863 F.2d 108 (1st Cir. 1988); Zeller v. UNUM Life Ins. Co., 1997 WL 732420 (E.D. La. 1997); Snead v. UNUM Life Ins. Co., 824 F.Supp. 69 (E.D. Va. 1993), aff'd in part, remanded on other grounds, 35 F.3d 556 (4th Cir. 1994).

Sampson involved facts similar to those of the case at bar. 863 F.2d at 108-09. The plaintiff in Sampson was covered by two policies: a workers compensation policy and a long-term disability policy. The long-term disability plan required an offset of benefits paid by a workers compensation plan, and the workers compensation policy required reimbursement from third-party settlements. After receiving a third-party settlement and reimbursing the workers compensation carrier, the plaintiff sued to prevent the disability carrier from withholding the offset amounts related to the period before the third-party settlement. The First Circuit held that to prevent the disability carrier from withholding the offset would "violate the principle underlying both the [disability] policy's offset provision and the reimbursement provisions of the Massachusetts workers compensation law, for it would allow Sampson to recover twice for the same loss." Id. at 111.

In Snead, the injured worker retained the workers compensation benefits, but also wanted to keep the disability benefits despite UNUM's offset provision which required a reduction in benefits for "any amount payable under any Workmen's Compensation Law, Occupational Disease Law, or any other legislation of similar purpose . . . ." 824 F.Supp. at 72. The court held that public policy against double recoveries, as expressed in the state's workers compensation law and the disability insurer's offset provision, counseled against allowing the injured worker to recover from both the workers compensation and disability insurance providers for the same injury. 824 F.Supp. at 73 (quoting Sampson, 863 F.2d at 110-11).

These cases are distinguishable. First, Sampson, and Snead in part, involved the disability insurer's right to an offset for benefits paid before the third-party settlement. Wyatt does not contest that UNUM is entitled to the $670 offset for this period. Second, both involved workers compensation benefits under state law, in which

the expressed policy was to prevent double recoveries. In such situations, workers compensation carriers are entitled to liens against any third-party settlements so that where possible, the burden of payment would be borne by tortfeasors rather than insurance carriers, which helps to keep rates down for state-mandated workers compensation insurance. By virtue of his partnership status in the firm, Wyatt was exempt from the state-required workers compensation insurance. His insurance was voluntary and not subject to the state requirements. Therefore, the state's policy interest is inapplicable.

Instead, the matter is simply one of contract interpretation, and on this ground, UNUM's policy in this case differs significantly from UNUM's policy in Snead. In Snead, the relevant offset provision looked to "amounts payable under any Workmen's Compensation Law," id. at 72, and the court determined that UNUM should receive an offset for the amounts the worker actually was paid and retained. The court's language makes this clear:

The Court finds, as did the court in Sampson, that the plain language of the policy provision permits the insurance company to offset disability benefits against workmen's compensation benefits previously paid to the disabled employee. Thus, UNUM is entitled to offset workmen's compensation benefits paid to Snead by Fireman's Fund against disability payments UNUM must pay to Snead.

824 F.Supp. at 73 (emphasis added). The court focused on payments actually made to the injured worker and allowed an offset for that amount. The case did not involve offsets for payments that would never be made. Even if we were to find that a public policy against double recoveries applied here, UNUM could show no double payments similar to those in Snead or Sampson, and thus the policy interest is not implicated by requiring UNUM to make payments to Wyatt notwithstanding the third-party settlement./1

Absent state or other law on the matter, employees such as Wyatt are free to purchase on the open market insurance coverage of their choosing, including policies to protect them from long-term disability. They may even purchase more than one policy for the purpose of guaranteeing higher recoveries. Those employees and the insurance companies must agree to the terms of those policies and are free to include provisions preventing double recoveries involving third-party settlements. UNUM can point to no provision in its own policy regarding third-party settlements, but instead attempts to piggyback on the provision in Federal's policy and the

principle expressed by state legislatures to prevent a double recovery. The plain language of the policy does not allow for this result, nor do any cases cited by the UNUM compel it. The offset provision in UNUM's contract does require a reduction for payments under other group benefit plans, but only to the extent that the insured is actually entitled to those payments. In this case, the employee, Wyatt, is entitled to no payments from Federal, and therefore the offset provision does not apply.

The district court here made an additional point we find persuasive. Under UNUM's reading of its policy, Wyatt actually would be worse off for purchasing the Federal policy then if he had not. Had Wyatt not purchased insurance from Federal, he would have received the $4 million settlement, against which UNUM had no claim because its policy did not contain a third-party settlement clause. He would continue to receive the full benefit under the UNUM policy, and there would be no talk of a $670 per week offset. By purchasing the Federal policy, UNUM argues that Wyatt cost himself $670 per week. Wyatt would have been very foolish to agree to this, and as the plain language of the policies indicates otherwise, we see no need to reach this irrational result.

B.  Attorneys' Fees

Finally, UNUM contests the district court's discretionary award of attorneys' fees to Wyatt as allowed by 29 U.S.C. sec. 1132(g)(1). The district court found that UNUM's position in opposing Wyatt's claim for benefits was not "substantially justified." See Bittner v. Sadoff & Rudoy Indus., 728 F.2d 820, 830 (7th Cir. 1984). We review for abuse of discretion a district court's award of attorneys' fees. See Filipowicz v. American Stores Benefit Plans Comm., 56 F.3d 807, 816 (7th Cir. 1995).

In awarding attorneys' fees to the prevailing party, we ask "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" Hooper v. Demco, Inc., 37 F.3d 287, 294 (7th Cir. 1994) (quoting Meredith v. Navistar Int'l Transp. Corp., 935 F.2d 124, 128 (7th Cir. 1991)). The district court held that the facts of this case were so easily distinguishable from the case law cited to support UNUM's decision, and the legal claim it made sufficiently weak, that UNUM was unreasonable in opposing Wyatt's claim. Furthermore, UNUM could without difficulty satisfy the award of $32,000 in attorneys' fees, which would serve to deter other companies from opposing similar meritorious claims in the future. Both are factors this Court considers in

awarding fees under ERISA. See Quinn, 161 F.3d at 478. We find that the district court did not abuse its discretion in awarding fees and costs to Wyatt.

III.  Conclusion

For the foregoing reasons, the district court's grant of summary judgment in favor of Wyatt is Affirmed, and UNUM is ordered to pay the attorneys' fees and costs associated with this case.

/1 Zeller, 1997 WL 732420, in addition to being inapplicable for the same reasons as Sampson and Snead, is an unpublished district court order and should not have been cited in briefs or at oral argument. See Circuit Rule 53(b)(2)(4). We therefore will disregard it.