Roberta WHITLINGER, Plaintiff,

v.

CONTINENTAL CASUALTY CO., Defendant.

No. Civ.A. 2:00CV579.

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 22, 2001.

*OPINION & ORDER*

DOUMAR, District Judge.

This matter is before the Court on Defendant Continental Casualty Company's ("Continental") Motion to Dismiss Count Two of Amended Complaint. For the reasons that follow, the Motion to Dismiss Count Two of Amended Complaint is **GRANTED.**

### I. Factual Background

Plaintiff Roberta Whitlinger brings this action to redress an alleged wrongful denial of long-term disability benefits under a disability insurance contract between her former employer, Sentara Health Systems ("Sentara"), and Continental.

Whitlinger became a Sentara employee on August 8, 1988. *See* Am.Compl. ¶ 6. As such, Whitlinger was qualified and vested to participate in the long-term disability benefits program provided for Sentara employees under the disability insurance contract between Continental and Sentara. *See id.* ¶ 5.

In June 1993, Whitlinger was diagnosed with Systemic Lupus Erythematous ("lupus"). *See id.* ¶ 7. The lupus gradually restricted Whitlinger's ability to continue working as a Utilization Review Coordinator, and Whitlinger finally stopped working at Sentara in November 1995. *See id.* ¶ 7. Pursuant to the terms of the disability policy between Sentara and Continental, Continental began paying Whitlinger short-term disability benefits in January 1996. *See id.* ¶ 8. In May 1996, in response to Continental's investigation of Whitlinger's eligibility for long-term disability benefits, Whitlinger's doctor, Garret M. Kelly, D.O., indicated to Continental that Whitlinger was totally disabled and would never be able to resume work. *See id.* ¶ 9. Based on its investigation, Continental began paying long-term disability benefits to Whitlinger in May 1996. *See id.* ¶ 10. Whitlinger also filed an application for Social Security disability benefits on March 13, 1996. *See* Pl.Ex. C.

Claude Michael Scialdone, Barry Ray Taylor, Scialdone & Taylor, Inc., Virginia Beach, VA, for plaintiff.

Steven H. Theisen, Midkiff, Muncie & Ross, P.C., Richmond, VA, for defendant.

In connection with Whitlinger's application for Social Security benefits, the disability insurance contract between Continental and Sentara states, *inter alia*, that

[t]he Monthly Benefit under this Policy shall be reduced by:

1. Disability benefits paid, payable, or for which there is a right under:

    a: The Social Security Act, excluding any amounts for which the Insured Employee's dependents may qualify because of the Insured Employee's Disability,

    b: Any Worker's Compensation or Occupational Disease Act or Law, or any other law which provides compensation for an occupational injury or sickness, or

    c: Any State Disability Benefit Law. . . .

*See* Addendum 2, Def.Ex. 1. This portion of the disability policy was explained in a letter dated October 21, 1996 from Continental to Whitlinger. That letter states that "[y]our Long–Term Disability benefits are reduced by any benefits that are paid or payable under the Social Security Act." *See* Pl.Ex. C. On October 24, 1996, Whitlinger executed an election form that requested Continental to pay full long-term disability benefits until Whitlinger received an award of Social Security benefits, with Whitlinger agreeing to reimburse Continental for any overpayment that would occur as a result of such an award. *See id.* Alternatively, Whitlinger could have elected to have Continental deduct her estimated Social Security award from Continental's monthly long-term disability payment, which would have resulted in a reduced monthly benefit initially, while preventing or reducing the potential for a large overpayment upon receipt of any lump-sum Social Security award for prior disability benefits. *See id.* In addition to that election form, Whitlinger executed an acknowledgment form on October 30, 1996 that said:

I, Roberta Whitlinger, acknowledge that my Long Term Disability (LTD) with

Continental Casualty Company, hereafter referred to as the Company, thru my employer, allows the Company to reduce the benefits payable to me by certain amounts paid or payable under the disability or retirement provisions of the Social Security Act (including any payments for eligible dependents), any Worker's Compensation, or any Occupational Disease Act or Law, any State Compulsory Disability Benefit Law, and any disability, retirement or other income benefits provided by or through my employer.

However, I also acknowledge the advantage of having the Company advance the full monthly benefit until I receive any of the benefits described above. I also realize that when I receive any of these benefits an overpayment will occur on my claim. I agree, in consideration of this advance, to repay the Company the full amount of these benefits paid during the time the full monthly benefit is paid under my LTD plan.

I understand, and agree, that repayment of monies advanced will be made in one (1) lump-sum upon receipt of such other benefits as described. I also acknowledge the right of the Company, upon my failure to repay in one (1) lump-sum, to withhold my monthly benefit until the overpayment is satisfied.

I also acknowledge and agree that in the event of my failure to deliver payment of any overpaid balance to the Company within sixty (60) days of demand for such overpaid balance, the Company may assess interest on such overpaid balance. The applicable interest rate will be the Prime Interest Rate in effect on the date of demand. Interest will be charged from the date of the overpayment through the final date of resolution. I understand that if I deliver payment to the Company within sixty (60) days of demand, no interest will be due.

I agree to reimburse the Company for all attorneys' fees and other expenses incurred as a result of my failure to

make reimbursement as described above. My acceptance of an advance, along with my signature below, is my acceptance of the terms of this agreement.

/S/ Roberta N. Whitlinger, November 30, 1996

Pl.Ex. C.

While Whitlinger's Social Security case was proceeding, Continental continued to pay Whitlinger full long-term disability benefits. In July 1997, Dr. Kelly again stated that Whitlinger was continuously disabled from November 1995 through July 1997, with the prognosis that Whitlinger would never be able to return to work. *See* Am.Compl. ¶ 12. Whitlinger alleges that in August 1997, based on the medical records of Dr. Kelly, Whitlinger's prior medical records, and the apparent review of Continental's medical consultant, Continental informed Whitlinger that she had "the capacity to perform the substantial and material duties of [her] occupation" and therefore Continental was denying further benefits beyond September 19, 1997. *See id.* ¶ 13. Whitlinger appealed that determination to Continental's Appeals Committee, and in December 1997, the Appeals Committee informed Whitlinger that "the denial of benefits was correct and proper based on the evidence." *See id.* ¶ 17.

In early 1998, Whitlinger received a lump-sum award for past, not future, disability benefits from the Social Security Administration. Consequently, on February 9, 1998, Continental wrote Whitlinger to request repayment in the amount of $17,870.88. *See* Pl.Ex. B. That letter states:

> We have recalculated your Long Term Disability benefits based upon the Social Security Award of $907.00 (primary award) and $453.00 (dependant award which consists of 50% of your primary award), for a total family award of $1360.00. Your Social Security Disability benefits became effective on May 1, 1996.

> [Continental] paid Long Term Disability Benefits from May 20, 1996 through September 19, 1997; therefore, this is the recalculation period that applies to your claim. The Appeals Committee's ruling of December 17, 1997 remains as stated. No further Long Term Disability benefits are payable beyond September 19, 1997.

> Because [Continental] had provided full benefits while you had applied for Social Security benefits, your claim is overpaid. [Continental] has paid 16 months at the full benefit rate of $1458.43, for a total payment of $23,334.88.

> Per your policy, there is a straight offset for income from other sources that are a direct benefit to you. The total of your gross monthly benefit ($1458.43), and your other direct income and your dependents [sic] Social Security award ($1360.00) cannot exceed 70% of your monthly salary. 70% of your monthly salary is $1701.50. Since the total of your gross monthly benefit and all other income ($2818.43) exceeds $1701.50, the excess amount ($1116.93) has been deducted from your benefit ($1458.43 [minus] $1116.93 = $341.50).

> This means that [Continental] should have paid 16 months × $341.50 = $5464.00. As [Continental] has paid a total amount of $23,334.88 and [Continental] should have paid $5464.00, this means that an overpayment of $17870.88 is due back to [Continental].

> Please forward your personal check in the amount of $17,870.88 made payable to Continental Casualty Company.

> /s/ Cheryl Sauerhauf

> Appeals Committee

Pl.Ex. B.

Whitlinger thereafter remitted $12,031.38 to Continental. *See* Am.Compl. ¶ 26. The exact date of this payment is not clear from the pleadings and briefs filed in this case, nor is it clear why Whitlinger's payment was for less than the amount requested by Continental.

## II. *Procedural Facts*

This litigation began on July 5, 2000 when Whitlinger filed a two-count Motion for Judgment in Norfolk Circuit Court. In Count One, Whitlinger pled a breach-of-contract claim, alleging that Continental's denial of long-term disability benefits to her was in violation of the contract between Sentara and Continental. In Count Two, Whitlinger pled an unjust enrichment claim, alleging that the $12,031.38 paid to Continental in 1998 following her receipt of the lump-sum award for past, not future, disability benefits from the Social Security Administration violated Virginia's antisubrogation laws, and thus Continental had no right to repayment of Whitlinger's Social Security award. Therefore, under Count Two, Whitlinger alleged that her payment of that award to Continental caused the unjust enrichment of Continental, and that Continental holds the sum of $12,031.38 in constructive trust for Whitlinger.

On August 7, 2000, Continental removed the suit to this Court and simultaneously filed a Motion to Dismiss, stating that both of Whitlinger's state-law claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* After briefing by the parties, the Court conducted a hearing on Continental's Motion to Dismiss on September 28, 2000. At that hearing, the Court did not rule on Continental's Motion to Dismiss, but gave Whitlinger the opportunity to drop the state-law claims and file an Amended Complaint under ERISA.

On October 18, 2000, Whitlinger filed an Amended Complaint. In her Amended Complaint, Whitlinger asserts two causes of action. Count One of the Amended Complaint is a claim for benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B), alleging that Continental's decision to deny Whitlinger long-term disability benefits was arbitrary, and thus Continental owes Whitlinger the limits of the disability policy between Sentara and Continental. Count Two of the Amended Complaint is an unjust enrichment claim also filed under the auspices of ERISA, 29 U.S.C. § 1132(a)(1)(B). In support of Count Two, Whitlinger again alleges that her $12,031.38 payment to Continental in 1998, after receipt of the lump-sum Social Security award for past, not future, disability benefits, was unlawful under Virginia's antisubrogation statute, Va.Code Ann. § 38.2–3405, as well as Va.Code Ann. § 38.2–3406.[1] Continental answered Whitlinger's Amended Complaint on October 30, 2000, and filed a Motion to Dismiss Count Two of Amended Complaint, which is the subject of the instant Opinion and Order, on October 31, 2000.

In its Motion to Dismiss Count Two of Amended Complaint, Continental argues that: (1) ERISA preempts Whitlinger's state-law claim of unjust enrichment; and (2) the policy at issue is a long-term disability policy that does not fall under either Virginia's antisubrogation statute, Va. Code Ann. § 38.2–3405, or Va.Code Ann. § 38.2–3406, primarily because both of these statutes apply to medical, health, and accident insurance plans, but not long-term disability plans. Moreover, Continental argues that even if disability insurance plans were governed by Va.Code Ann. §§ 38.2–3405 or –3406, the offset provision within Continental's plan is not proscribed by either statute.

The Court granted Whitlinger an extension of time to respond to Continental's Motion to Dismiss Count Two of Amended Complaint, and Whitlinger filed her response on November 27, 2000. In her response, Whitlinger states that the disability plan at issue is not self-insured or self-funded by Sentara, but rather the disability plan is an insurance plan, and that Virginia laws regulating insurance are not

---

1. The Amended Complaint actually cites Va. Code Ann. § 38.2–3405 and § 38.2–2406 as the relevant portions of the Virginia Code. In a letter dated November 13, 2000, however, Whitlinger's counsel notified Continental's counsel that this was a typographical error. Whitlinger's counsel also notified the Court of this error in Whitlinger's Opposition to Motion to Dismiss Count Two of Amended Complaint.

preempted by ERISA. Citing *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), Whitlinger also claims that equitable relief is permitted under ERISA. Finally, Whitlinger argues that, on its face, Virginia's antisubrogation statute, Va.Code Ann. § 38.2–3405, does not permit subrogation or reimbursement, while Va.Code Ann. § 38.2–3406 does not permit a set-off provision within the disability insurance contract between Sentara and Continental. .

Continental filed its reply memorandum on December 4, 2000. Accordingly, the issues raised by Continental's Motion to Dismiss Count Two of Amended Complaint have been fully briefed, and the matter is now ripe for disposition.

### III. *Standard of Review*

When deciding whether to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, the factual allegations in the plaintiff's complaint must be accepted as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion should only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a Rule 12(b)(6) motion, a court should only consider the allegations in the pleadings, disregarding affidavits or other materials. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). If, as in the instant case, "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b).

Summary judgment is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus.*, 763 F.2d 604, 610 (4th Cir.1985). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *See Celotex Corp.*, 477 U.S. at 322–24, 106 S.Ct. 2548. Such facts must be presented in the form of exhibits and sworn affidavits. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

### IV. *Analysis*

This motion presents two issues: (1) whether ERISA preempts application of Virginia's antisubrogation statute, Va.Code Ann. § 38 .2–3405, as well as Va.Code Ann. § 38.2–3406, to Sentara's disability insurance plan with Continental; and (2) whether the offset provision contained in that plan, and Continental's subsequent request for repayment after Whitlinger received her lump-sum Social Security award for past disability benefits, violates either Virginia's antisubrogation statute, Va.Code Ann. § 38.2–3405, or Va.Code Ann. § 38.2–3406.

### A. *ERISA Preemption*

**1. *The Plan under which Whitlinger Seeks Benefits is an Employee Welfare Benefit Plan that is Governed by ERISA.***

Under ERISA, an "employee welfare benefit plan" is defined as:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an

employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(a).

Since the plan under which Whitlinger seeks benefits is: (1) a plan, (2) maintained, (3) by an employer, (4) for the purpose of providing disability benefits, (5) to employees of Sentara, it meets all of the definitional requirements to be an ERISA welfare benefit plan, and, as such, is governed by ERISA's substantive provisions. *See Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 446 (4th Cir. 1993).

### 2. *ERISA Preempts Virginia's Antisubrogation Statute Only If the Continental Plan is Self–Funded, as Opposed to an Insurance Plan.*

■ Where a benefits plan comes under the coverage of ERISA, it is well-settled that all state laws that "relate to" employee welfare benefit plans, including any common-law claims and most state statutory rights of employees seeking to recover plan benefits, are preempted by ERISA. *See* 29 U.S.C. § 1144(a); *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). However, ERISA does not preempt state laws that regulate the state's insurance industry. *See* 29 U.S.C. § 1144(b)(2)(A); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

■ An interesting interplay between ERISA's broad preemption of state-law causes of action, while simultaneously leaving the insurance industry subject to state regulation, occurs in the area of subrogation, offset, and reimbursement clauses in certain employee-benefit plans. Many states, including Virginia, have statutes that expressly prohibit subrogation clauses in insurance contracts. *See, e.g.,* Va.Code Ann. § 38.2–3405. In theory, assuming that Whitlinger could satisfy the elements of this statute, Continental would have no right of subrogation or reimbursement to the disability payments that Whitlinger received from the Social Security Administration. The U.S. Supreme Court has ruled, however, that state antisubrogation statutes, like Virginia's, are preempted by ERISA (and thus the subrogation/repayment clauses of the employee-benefits plan governs) only if the plaintiff's benefits plan is *self-funded* or *self-insured,* that is, if the employer and the employees pay all of the benefits distributed by the plan. *See FMC Corporation v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Conversely, the antisubrogation statute is *not* preempted if the plaintiff's benefits plan is an *insurance plan,* that is, if the employer and the employees are merely purchasing insurance from an insurance carrier that will, in turn, satisfy any employee claims under the employee-benefits plan. *See id.* The logic behind this result is that "an insurance company that insures a plan remains an insurer for purposes of state laws 'purporting to regulate insurance'" and the insurance company is therefore not relieved from state insurance regulation, such as Virginia's antisubrogation statute. *See id.* at 61, 111 S.Ct. 403. Accordingly, the question of whether ERISA preempts Virginia's antisubrogation statute, Va.Code Ann. § 38 .2–3405, as well as Va.Code Ann. § 38.2–3406, hinges on whether Sentara's employee-benefits plan is *self-funded* (in which case ERISA preempts the antisubrogation statute) or if the plan is an *insurance plan* (in which case ERISA does not preempt the antisubrogation statute, and Whitlinger's unjust enrichment claim should be allowed to proceed).

### 3. The Continental Plan is an Insurance Plan, and thus ERISA Does Not Preempt the Applicability of Virginia Laws Regulating Insurance.

At the September 28, 2000 hearing on Continental's first Motion to Dismiss, Continental conceded that the disability plan at issue is an insurance plan, and not a self-funded or self-insured plan, and thus Continental is serving as both an insurer and the plan administrator. Accordingly, the Court finds that ERISA does not preempt application of Virginia's insurance laws, including Va.Code Ann. §§ 38.2–3405 and –3406, to the disability plan at issue in the instant case.

### B. Virginia's Antisubrogation Statute

Having decided that ERISA does not preempt the application of Virginia's antisubrogation statute, Va.Code Ann. § 38.2–3405, with respect to the disability insurance contract between Continental and Sentara, the Court now turns to an analysis of the elements of that statute, as well as Va.Code Ann. § 38.2–3406, and whether Whitlinger's repayment to Continental of a portion of the proceeds from her Social Security award runs afoul of either statute.

### 1. Analysis of Va.Code Ann. § 38.2–3405

Virginia's antisubrogation statute, Va. Code Ann. § 38.2–3405, states as follows:

§ 38.2–3405. **Certain subrogation provisions and limitations upon recovery in hospital, medical, etc., policies forbidden.**—A. No insurance contract providing hospital, medical, surgical and similar or related benefits, and no subscription contract or health services plan delivered or issued for delivery or providing for payment of benefits to or on behalf of persons residing in or employed in this Commonwealth shall contain any provision providing for subrogation of any person's right to recovery for personal injuries from a third person. B. No such contract, subscription contract or health services plan shall contain any provision requiring the beneficiary of any such contract or plan to sign any agreement to pay back to any company issuing such a contract or creating a health services plan any benefits paid pursuant to the terms of such contract or plan from the proceeds of a recovery by such a beneficiary from any other source; provided, that this provision shall not prohibit an exclusion of benefits paid or payable under workers' compensation laws or federal or state programs, nor shall this provision prohibit coordination of benefits provisions when there are two or more such accident and sickness insurance contracts or plans providing for the payment of the same benefits. Coordination of benefits provisions may not operate to reduce benefits because of any benefits paid, payable, or provided by any liability insurance contract or any benefits paid, payable, or provided by any medical expense or medical payments insurance provided in conjunction with liability coverage.

. . . .

Va.Code Ann. § 38.2–3405 (1999 Rep.Vol. & 2000 Cum.Supp.).

Under Count Two of her Amended Complaint, Whitlinger claims that her repayment to Continental, following her receipt of the lump-sum Social Security award for prior disability benefits, of the amount advanced to her by Continental pursuant to the offset and repayment provisions in the disability plan violated Virginia's antisubrogation statute. In response, Continental argues that the statute, on its face, does not apply to the instant case because: (1) the instant case does not involve a subrogation situation, and therefore subpart (A) of the statute is inapplicable; (2) the statute does not apply to disability insurance contracts; and (3) even if the statute were to apply to disability insurance contracts, subpart (B) contains an express exclusion for Social Security payments.

The Court finds Continental's interpretation and application of § 38.2–3405 to the facts of the instant case to be most

persuasive. As an initial matter, subpart (A) of the statute, § 38.2–3405(A), is inapplicable because that portion of the statute addresses only subrogation, and subrogation is not at issue in this case. "Subrogation in the tortfeasor context involves the insurer stepping into the shoes of the insured and attempting to recover from the third party who caused the injury." *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 990 n. 7 (4th Cir.1990) (citing 16 *Couch on Insurance 2d* § 61:172 (Rev. ed.1983)). Like *Waller*, the instant case concerns a dispute over the terms of the contract itself, specifically the offset and repayment provisions, and the contract does not provide for subrogation against a third party. All Continental sought was the money it paid out to the insured; it did not attempt to step into Whitlinger's shoes and proceed directly against the Social Security administration or any other third person. Consequently, subpart (A) is inapplicable to the instant case.

■■■■ The second reason that subpart (A), and consequently subpart (B), which addresses repayment and not subrogation provisions, is inapplicable to the instant case is that subpart (A) only applies to "insurance contract[s] providing hospital, medical, surgical and similar or related benefits" and "subscription contract[s] and health services plan[s]." Va.Code Ann. § 38.2–3405(A). Subpart (B) only applies to the same "such contract[s]" as listed in subpart (A), as well as "subscription contract[s] and health services plan[s]." Va. Code Ann. § 38.2–3405(B). The contract at issue in this case, however, is a disability insurance contract—not a "hospital, medical, surgical and similar or related" insurance contract. Disability insurance is "insurance coverage purchased to protect [the] insured during periods of incapacity from working." *Black's Law Dictionary* 416 (5th Ed.1979). In a very general sense, disability insurance is designed to provide a substitute source of income during the insured's period of incapacity as the insured is otherwise not able to return to work and earn a salary or wages. Disability insurance is not designed to compensate the insured for losses incurred in connection with or related to the treatment of the event that caused the incapacity—that is the role of "hospital, medical, surgical and similar or related" insurance contracts to which § 38.2–3405 would apply. Consequently, the Court finds that disability insurance is not "similar or related to" hospital, medical, and surgical insurance so as to come under the province of Va.Code. Ann. § 38.2–3405. A disability insurance contract is also not a "subscription contract" or a "health services plan." A subscription contract is defined as "any contract by which one becomes bound to buy," *Black's Law Dictionary* 1280 (5th Ed.1979), while the Virginia Code defines a "health services plan" as "any arrangement for offering or administering health services or similar or related services by a corporation" that is licensed as such. Va. Code Ann. § 38.2–100. The canon of statutory construction "inclusio unius est exclusio alterius" is thus applicable: where the Virginia legislature has set forth specific types of insurance to which § 38.2–3405 is applicable, the Court is not at liberty to enlarge the statute so as to reach the disability insurance policy at issue in the instant case.

The only authority Whitlinger cites in support of applying § 38.2–3405 to the instant case is this Court's unpublished decision in *Health Cost Controls v. Whalen*, No. CIV 1:96–66A, 1996 WL 787163 (E.D.Va. Aug. 14, 1996) (Mehrige, J.). In *Whalen*, a health plan administrator, pursuant to the reimbursement provisions of the health plan, sued the insured to recover money received by the insured after the insured settled a tort claim with a third party. The *Whalen* court held that § 38.2–3405 precluded enforcement of the reimbursement provision, and granted summary judgment for the insured. On these facts alone, *Whalen* is clearly distinguishable from the instant case. *Whalen* involved a subrogation situation, and the plan at issue in that case provided the insured with "medical, surgical, and hospital care benefits," *Whalen*, 1996 WL

787163, at *1. This is precisely the situation to which § 38.2–3405, by its terms, is applicable. Unlike the instant case, *Whalen* did not involve an offset and repayment provision regarding Social Security payments within a disability insurance policy, such as the one at issue in the instant case. Moreover, this Court and the Fourth Circuit have both approved of an offset provision similar to the one at issue in this case. *See Snead v. UNUM Life Ins. Co. of America*, 824 F.Supp. 69, 73 (E.D.Va.1993) (Cacheris, C.J.) (holding that insurer under group disability policy issued to employer was entitled under ERISA to offset workers' compensation benefits paid to injured employee by third party against benefits paid by insurer under disability policy, where policy permitted such an offset), *aff'd in part and remanded on other grounds*, 35 F.3d 556 (4th Cir.1994).

Finally, even if Va.Code Ann. § 38.2–3405 was applicable to a disability insurance contract, subpart (B) provides that the statute "shall not prohibit an exclusion of benefits paid or payable under workers' compensation laws or federal or state programs," and therefore Continental argues that it both properly excluded and subsequently requested repayment from Whitlinger's Social Security disability award under the disability insurance policy between Continental and Sentara. In response, Whitlinger argues that subpart (B) only allows an "exclusion" of benefits received from Social Security, and not the repayment of a portion of those same benefits where Continental determines that it initially overpaid Whitlinger's disability claim. Thus, Whitlinger concedes that if Continental had only offset Whitlinger's initial disability payments against her estimated Social Security award and paid her reduced disability benefits from the start, then Whitlinger would not have a cause of action under § 38.2–3405.

The Court finds that Continental's interpretation of § 38.2–3405 on this issue is most persuasive. Whitlinger's construction of the statute elevates form over substance. Under Whitlinger's interpretation,

if Continental discovered after-the-fact that Whitlinger received Social Security benefits during a period for which Continental had already paid Whitlinger benefits, then Continental could not recoup its payments. That is, Whitlinger would be free to breach the terms of her benefits plan by not informing Continental of her receipt of Social Security benefits. This is contrary to the terms of the plan and contrary to the holding in *Snead*, where the court held that the disability insurer could offset both present and future disability payments against the proceeds of the insured's workers' compensation settlement. *See Snead*, 824 F.Supp. at 73. Moreover, Continental gave Whitlinger the option of either receiving a full disability award from the start or, alternatively, receiving a reduced award that would reflect her estimated Social Security award and thereby reduce or eliminate altogether the risk of Whitlinger having to make a large repayment to Continental after Whitlinger received her lump-sum Social Security award for past disability benefits. The repayment option clearly worked to Whitlinger's advantage in that Continental paid Whitlinger full disability payments from the start, while Whitlinger was only obligated to repay a portion of those payments to Continental if her Social Security claim was successful. Consequently, the Court finds that Continental did not violate § 38.2–3405(B) by giving Whitlinger the option of either receiving reduced benefits initially or full benefits with repayment after receipt of the Social Security award, and, after Whitlinger chose the latter option, Continental did not violate § 38.2–3405 by enforcing Whitlinger's obligation to repay a portion of her Social Security award to correct Continental's overpayment. To hold otherwise would permit Whitlinger to obtain a double-recovery as she would collect the maximum amount of disability benefits payable by Continental in addition to her Social Security award. *See Snead*, 824 F.Supp. 69, 73 (holding that where insured received one full payment of workers' compensation benefits

following injury, insured could not receive disability benefits for this period as well since that would allow insured to "recover twice for the same loss," contrary to the terms of the disability plan between the insurer and the insured's employer).

The Court finds further support for its decision that § 38.2–3405 does not proscribe the offset and repayment provisions for Social Security payments to the beneficiary of under a long-term disability policy due to the fact that the General Assembly has codified a similar offset provision for disability payments to state employees. That statute provides:

### § 51.1–1114. Adjustments to disability benefits.

A. Disability benefit payments shall be offset by an amount equal to any sums payable to a participating employee from the following sources:

1. During the first twelve months the employee receives disability benefits, an amount equal to the employee's wages and salary from any employment times the creditable compensation replacement percentage;

2. After the first twelve months the employee receives disability benefits, an amount equal to seventy percent of the employee's wages and salary from any employment;

3. Disability payments from the Social Security Administration or other similar governmental disability program benefits received by the employee or his family as a result of the qualifying disability;

4. Benefits received from any other group insurance contract provided by the Commonwealth for the purpose of providing income replacement; and

5. Benefits paid under any compulsory benefits law.

B. Disability benefit payments shall be offset by amounts from any of the sources listed in subdivisions A 3, A 4, and A 5 for which a participating employee is eligible as if the employee received such amounts. However, if the employee has applied for such benefits, and has reapplied and appealed denials of the claim as requested by the administrator of the plan, and the claim is not approved, the employee's disability payments shall not be reduced thereby.

C. If a participating employee's disability benefit payments are reduced as the result of payments from sources listed in subdivisions A 3, A 4, and A 5 or pursuant to subsection B, the employee's disability benefits shall not thereafter be further reduced on account of cost-of-living increases in payments from such sources.

D. Participating employees shall be required to repay, with interest to the Board or their employer, any overpayments of disability benefits on account of the failure of the employee to provide the Board or its designee with information necessary to make any of the reductions required to be made under this article.

E. Any payment to a participating employee that is later determined by the Board or by the employer to have been procured on the basis of any false statement or falsification of any record knowingly made by or on behalf of the member, or the employee's failure to make any required report of change in disability status, may be recovered from the employee by the Board, with interest, either by way of a credit against future payments due the employee or by an action at law against the employee.

Va.Code Ann. § 51.1–1114.

That statute, in subpart (A)(3), contains an offset provision identical to the one at issue in the instant case, as well as a limited repayment provision under subpart (D). By enacting § 51.1–1114, the General Assembly is presumed to act with full knowledge of existing law and, where two statutes might be in conflict, it is a cannon of statutory construction that the subsequently enacted statute controls. Consequently, since § 38.2–3405 was enacted in 1973, and § 51.1–1114 was enacted in 1998, to the extent that these statutes might

conflict, the latter statute controls, and the Court finds this to be an additional reason § 38.2–3405 does not proscribe Continental's actions in the instant case. Whitlinger has no claim for unjust enrichment under this statute.

### 2. *Analysis of Va.Code Ann. § 38.2–3406*

As an alternative to her argument under § 38.2–3405, Whitlinger also argues that Continental's actions in the instant case are proscribed by Va.Code Ann. § 38.2–3406. That statute states as follows:

§ **38.2–3406. Accident and sickness benefits not subject to legal process.**— The installment payments to the holder of any accident and sickness insurance policy or certificate shall not be subject to the lien of any attachment, garnishment proceeding, writ of fieri facias, or to levy or distress in any manner for any debt due by the holder of the policy or certificate.

Va.Code Ann. § 38.2–3406 (1999 Repl. Vol.).

■ On its face, this statute applies to liens and levies under accident and sickness insurance policies, and not a setoff/reimbursement provision in a disability insurance policy such as the one at issue in the instant case. Consequently, the Court finds that § 38.2–3406 is not applicable to the instant case. Although Whitlinger cites *Atlantic Life Ins. Co. v. Ring*, 167 Va. 121, 187 S.E. 449 (1936) (holding that predecessor to § 38.2–3405 prohibited an insurance company's offset of payments to the insured against a prior, unrelated debt owed by the insured to the insurance company), in support of applying § 38.2–3405 to the instant case, the Court finds that *Ring* is distinguishable. Unlike in *Ring*, in the instant case Continental is not attempting to offset another debt that Whitlinger owes Continental. Continental is simply exercising its right to reimbursement/setoff for Whitlinger's Social Security payments as set forth in the disability insurance policy. Accordingly, the Court finds that § 38.2–3406 does not apply to the instant case, and Whitlinger has no claim for unjust enrichment under this statute.

### C. *ERISA Provides Whitlinger's Exclusive Remedy.*

Since the Court finds that neither Va. Code Ann. §§ 38.2–3405 or –3406 apply to Whitlinger's unjust enrichment claim under Count Two of her Amended Complaint, one final issue remains: whether the unjust enrichment claim is thereby preempted by ERISA such that Whitlinger's federal remedy under ERISA, 29 U.S.C. § 1132(a), is exclusive. In the absence of an applicable Virginia statute regulating insurance, the Court finds that ERISA's broad preemption clause acts to preempt Whitlinger's unjust enrichment claim, and thus the terms of the disability policy control. Accordingly, Whitlinger's federal remedy under ERISA, 29 U.S.C. § 1132(a) for wrongful termination of benefits is exclusive, and her claim for unjust enrichment under Count Two must therefore be dismissed. *See Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452 (4th Cir.1992) (holding that, in ERISA context, resort to federal common law is inappropriate where to do so would conflict with the statutory provisions of ERISA, discourage employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan).

### D. *Summary*

In summary, the Court finds that, while ERISA does not preempt application of Va.Code Ann. §§ 38.2–3405 or –3406 to the disability insurance policy at issue in this case, both statutes are nonetheless inapplicable. First, the instant case does not involve subrogation, and thus subpart (A) of § 38.2–3405 is inapplicable. Second, both subpart (A) and subpart (B) of § 38.2–3405 only apply to insurance contracts providing "hospital, medical, surgical, and similar or related benefits," as well as "subscription contract[s] and health services plan[s]," and therefore the statute is not applicable to a disability insurance plan such as the one at issue in the instant

case. Third, even if § 38.2–3405 was applicable to the disability insurance plan in the instant case, the statute expressly allows an exclusion of Social Security benefits, and Continental did not violate the statute by initially providing full disability payments to Whitlinger on the condition that she repay Continental for any overpayment that would result following her receipt of a lump-sum Social Security award for past disability benefits. In addition, Va.Code Ann. § 38.2–3406 is inapplicable to the instant case since that statute only proscribes liens against installment payments under an insured's accident and sickness insurance policy, and not Whitlinger's repayment of a portion of her lump-sum Social Security disability award to Continental after Continental determined that it had initially overpaid Whitlinger's claim. Lastly, Va.Code Ann. § 51.1–1114, enacted years subsequent to § 38.2–3405, clearly and unequivocally calls for an adjustment to disability payments by virtue of Social Security disability payments.

Since both Va.Code Ann. §§ 38.2–3405 and –3406 are inapplicable to the instant case, Whitlinger's unjust enrichment claim fails, and the express terms of the disability policy control such that Whitlinger's federal remedy under ERISA, 29 U.S.C. § 1132(a), is exclusive. Accordingly, Continental's Motion to Dismiss Count Two of Amended Complaint is **GRANTED.**

### V. *Conclusion*

For the reasons stated herein, Continental's Motion to Dismiss Count Two of Amended Complaint is **GRANTED,** and Count Two of Whitlinger's Amended Complaint is hereby ordered **DISMISSED.** Count One of Whitlinger's Amended Complaint, alleging wrongful termination of benefits under ERISA, remains pending.

The Clerk is **DIRECTED** to mail a copy of this to all counsel of record.

**IT IS SO ORDERED.**