Michael S. LANE, Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.

CIVIL ACTION NO. 1:02–CV–1573.

United States District Court, M.D. Pennsylvania.

Nov. 25, 2003.

Alan R. Boynton, Jr., McNees, Wallace & Nurick, Harrisburg, PA, for Mediator.

E. Thomas Henefer, Kirk L. Wolgemuth, Stevens & Lee, Reading, PA, for Defendant.

Thomas P. Lang, Law office of Dale E. Anstine, York, PA, for Plaintiff.

### MEMORANDUM

CONNER, District Judge.

Presently before the court are cross-motions for summary judgment (Docs. 19, 22) with respect to the claim of plaintiff, Michael S. Lane ("Lane"), to recover disability benefits allegedly owed to him by defendant, UNUM Life Insurance Company of America ("UNUM"), under an employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1401. Plaintiff argues that defendant, administrator of the plan, improperly offset workers' compensation benefits after plaintiff stopped receiving these benefits because of his recovery from a third-party tortfeasor. Defendant contends that plaintiff is still "eligible" for workers' compensation benefits, permitting an offset against employee disability benefits.

The issue presented in this case is whether an employee who no longer receives periodic workers' compensation payments because of an independent recovery from a third-party tortfeasor may nevertheless be considered "eligible" for workers' compensation benefits. For the reasons that follow, the court answers this question in the affirmative and will grant defendant's motion for summary judgment.

### I. Statement of Facts

On April 19, 1997, Lane suffered a disabling injury during the course of his employment as a restaurant manager, a position in which he earned $5000 per month. (Doc. 21 ¶¶ 1, 3–4, 6). Shortly thereafter, Lane applied for and was granted workers' compensation benefits under Pennsylvania law in the amount of $2168 per month. In addition, Lane began receiving social security disability benefits of approximately $1081 per month. (Doc. 21 ¶¶ 9–10).

Lane also applied for benefits under an employee benefit plan, offered by Lane's employer and administered by UNUM. (Doc. 21 ¶ 11). The plan provides for the payment of monthly benefits to covered

individuals injured during the course of their employment. Once the injured employee offers sufficient proof of disability to UNUM, the plan requires payments to continue for so long as the person remains disabled. (Doc. 21, Ex. 1). An employee's monthly benefit under the plan equals sixty percent of the employee's earnings "just prior to" the date of the disabling injury less any "other income benefits" being paid to the employee as a result of the injury. (Doc. 21, Ex. 1). "Other income benefits" include, *inter alia*, "[t]he amount for which the [employee] is eligible ... under Workers' or Workmen's Compensation Law [or] ... any other act or law of like intent." [1] (Doc. 21, Ex. 1). Notwithstanding "other income benefits," the employee is entitled to a minimum benefit of $300 per month throughout the duration of disability. (Doc. 21, Ex. 1).

Because Lane's total "other income benefits" from workers' compensation and social security exceeded $3000—sixty percent of his prior monthly earnings— UNUM set Lane's monthly benefit at the minimum $300. (Doc. 21 ¶ 16). In 2000, after Lane had received employee benefits from UNUM for more than a year, Lane sought and obtained a settlement of $750,000 from a third party responsible for his injury. (Doc. 21 ¶ 12). In response, and in accordance with Pennsylvania law, *see* PA. STAT. ANN. tit. 77, § 671 (providing for subrogation of employer to employee's rights), Lane's employer stopped paying monthly workers' compensation benefits. However, UNUM continued to offset the $2168 that Lane had previously received in workers' compensation benefits against his employee benefits. (Doc. 21 ¶¶ 13–17).

In 2002, plaintiff filed a claim against UNUM pursuant to 29 U.S.C.

§ 1132(a)(1)(B) (providing cause of action "to recover benefits due ... under the terms" of employee benefit plans). In the complaint, Lane alleged that he is no longer "eligible" for workers' compensation and that UNUM acted in contravention of plan provisions in continuing to offset this amount against his employee benefits. (Doc. 8).

## II. *Standard of Review*

Federal Rule of Civil Procedure 56 permits the entry of summary judgment against a party on an issue or a claim when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 231–32 (3d Cir.2001). In resolving a motion for summary judgment, courts should not weigh conflicting evidence or make factual findings but, rather, should "consider all evidence in the light most favorable to the non-moving party" to determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Schnall v. Amboy Nat'l Bank*, 279 F.3d 205, 209 (3d Cir.2002). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Third Circuit Court of Appeals has adopted a "sliding scale" standard of re-

---

**1.** If these benefits are paid in a lump sum, the plan requires the amount to be prorated over the duration of the disability and those prorat- ed amounts to be offset against plan benefits. (Doc. 21, Ex. 1).

view for cases involving a denial of benefits under an employee benefit plan when the provisions of the plan grant interpretive discretion to the administrator but the administrator has a potential conflict of interest. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 392 (3d. Cir.2000); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) ("[A] denial of benefits under [ERISA] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). Assuming that the plan *sub judice* grants discretion to UNUM, this sliding scale approach would be applicable based on the financial interest of UNUM—responsible for making payments to plaintiff—in the outcome of this case. *See Pinto*, 214 F.3d at 378 ("[W]hen an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review."). However, because the court would find for UNUM even if it reviewed the case *de novo*, it is unnecessary to resolve the precise level of deference that should be accorded to defendant's interpretation of the plan terms.

### III. *Discussion*

ERISA, a "comprehensive and reticulated statute" governing the establishment and administration of employee benefit plans, "provides 'a panoply of remedial

devices' for participants and beneficiaries of benefit plans." *Firestone*, 489 U.S. at 108, 109 S.Ct. 948 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). One of these devices, embodied in 29 U.S.C. § 1132(a)(1)(B), is a federal cause of action for private employees "to recover benefits due ... under the terms" of these plans. *Id.* This provision permits private employees to bring a federal breach of contract claim against administrators who fail to conform with plan provisions. *See Mass. Mut. Life*, 473 U.S. at 148, 105 S.Ct. 3085 (stating that ERISA was enacted "to protect contractually defined benefits").

■ As in all contract claims, the threshold issue is proper interpretation of the terms of the agreement. *See Epright v. Envtl. Res. Mgmt., Inc.*, 81 F.3d 335, 339–41 (3d Cir.1996). In this case, the plan permits UNUM to offset against plan benefits those amounts for which the employee is "eligible" under workers' compensation laws.[2] (Doc. 21, Ex. 1). While the parties do not dispute that "eligible" is synonymous with "entitled," *see, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 736 (Philip Babcock Gove ed., 1993), they disagree significantly on the method by which the court should determine entitlement to workers' compensation benefits.

### A. *Interpretation of Entitlement to Workers' Compensation Benefits*

Several courts, though none within the Third Circuit, have addressed the issue of

---

**2.** Interestingly, plaintiff's stipulation of facts, submitted jointly with defendant, includes the following statement:

> Plaintiff is still eligible for Workers' Compensation benefits under Pennsylvania law, but the benefits are presently suspended until such time as the third-party settlement is exhausted at which time his benefits will be reinstated.

(Doc. 21 ¶ 15). The court could presumably find that defendant properly offset workers'

compensation benefits against employee plan benefits solely on the basis of the admission that Lane remains "eligible" for workers' compensation benefits. However, because the interpretation of contractual terms is essentially a legal question, *see, e.g., Epright*, 81 F.3d at 339–41, the court will engage in a full analysis of eligibility, though reaching the same result.

entitlement to workers' compensation benefits in the context of permissible offsets under an employee benefit plan. These decisions generally employ one of three analytical approaches, each differing in terms of their focus. The Seventh Circuit Court of Appeals has adopted a plain meaning approach, based on the four corners of the employee plan itself. *See Wyatt v. UNUM Life Ins. Co. of Am.*, 223 F.3d 543, 546 (7th Cir.2000). Reasoning that to be entitled to something requires a right to possess it, this approach holds that entitlement to workers' compensation requires that the employee be able to receive and retain periodic benefit payments. *Id.* As the Seventh Circuit has explained, the opposing "interpretation[,] that one can be eligible to receive something that one has no right to possess in any sense, is clearly wrong." *Id.*

Although the four corners analysis has superficial appeal, it is flawed. Entitlement cannot be determined solely by reference to the amount a person keeps in his or her pocket. Neither "eligible" nor "entitled" means "received." [3] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 736, 758, 1894; *see also Firestone*, 489 U.S. at 119, 109 S.Ct. 948 (Scalia, J., concurring in part and concurring in judgment) (distinguishing between receipt and eligibility). The law recognizes many situations in which a person may irrevocably renounce the right to receive a benefit but still be considered "eligible" for it. *See, e.g., Shaak v. Pa. Dep't of Public Welfare*, 561 Pa. 12, 747 A.2d 883, 885–86 (2000) (finding corpus of irrevocable trust "available" to settlor for purposes of determining public welfare benefits); *Troy v. Hart*, 116 Md. App. 468, 697 A.2d 113 (1997) (finding a social security recipient who disclaims testamentary bequest is still entitled to the proceeds for purposes of determining social security benefits). Simply, right of possession is not the *sine qua non* of entitlement. Construction of the term "eligible" cannot, without more, provide a definitive answer to the question of entitlement to workers' compensation benefits.

Recognizing this conclusion, several courts have determined entitlement to workers' compensation benefits by importing the presumed intent of workers' compensation laws: to provide a single full recovery to injured employees. *See Sampson v. Mut. Benefit Life Ins. Co.*, 863 F.2d 108, 109–11 (1st Cir.1988); *Snead v. UNUM Life Ins. Co. of Am.*, 824 F.Supp. 69, 73 (E.D.Va.1993), *aff'd in part*, 35 F.3d 556 (4th Cir.1994) (mem.); *Zeller v. UNUM Life Ins. Co.*, No. 96–3514, 1997 WL 732420, at *5 (E.D.La. Nov.20, 1997), *aff'd*, 161 F.3d 8 (5th Cir.1998) (mem.). To avoid granting the employee a double recovery, these courts generally find the employee eligible for benefits and permit the administrator to offset. *See, e.g., Sampson*, 863 F.2d at 109–11. This approach resolves the issue of entitlement not on the language of the plan or statutes but on the inferred purpose of these provisions, basing eligibility for workers' compensation benefits on equitable concerns.

■ The failure of this approach to consider the text of either the employee plan or applicable statutory provisions renders it inadequate. While intent may serve as a useful backup interpretive technique, it cannot serve as a primary method of analysis. *See Carter v. United States*, 530 U.S. 255, 271, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) ("In analyzing a statute, we begin by examining the text, not by 'psychoanalyzing those who enacted it.'") (quoting *Bank One Chicago, N.A. v. Midwest Bank*

---

3. However, as will be discussed later, Lane did in fact receive the workers' compensation benefits for which he now claims ineligibility. *See infra* Part III.B–C.

& Trust Co., 516 U.S. 264, 279, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996) (Scalia, J., concurring in part and concurring in judgment)). Courts should apply this approach only after exhausting other techniques that maintain greater fidelity to the text. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). See generally John F. Manning, Textualism and the Equity of the Statute, 101 Colum.L.Rev. 1, 89–102 (2001). Intent is a secondary path, and should be walked only if ambiguity blocks access to plain meaning.

The third approach strikes a balance between the first and second, maintaining fidelity to the text of the plan while recognizing the need to delve beyond the terms themselves and consider underlying workers' compensation law. See Nesom v. Brown & Root, U.S.A., Inc., 987 F.2d 1188, 1192 (5th Cir.1993). This method operates on the premise that, by linking benefits under the plan to entitlement under state workers' compensation law, employee benefit plans of the type sub judice contemplate application of state law. See id. Hence, entitlement to workers' compensation cannot be decided without a detailed analysis of state law provisions governing the subject.

 Although ERISA generally mandates application of federal law to interpretation of employee benefit plans, see 29 U.S.C. § 1144(a), this prohibition does not foreclose reliance on state law when the plan incorporates these provisions. See Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 146–47, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (stating that ERISA preempts only those laws that themselves affect employee benefit plans). ERISA preempts those laws that seek to govern employee benefit plans, but it does not preclude, in a wholesale fashion, consideration of state law in the context of ERISA

claims. See id. (stating that § 1144(a) "cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course'") (quoting N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). In the instant case, Pennsylvania workers' compensation law does not govern the employee benefit plan, but it must be considered because the parties incorporated it into the terms of the plan. In these circumstances, ERISA does not preclude the court from applying state law principles to interpret "eligibility."

The court finds this third approach to be the most theoretically acceptable and consistent method of analysis, and will adopt it in this case. Accordingly, the court will review the relevant Pennsylvania statutes to determine whether plaintiff is "entitled" to workers' compensation benefits.

## B. Entitlement Under Pennsylvania Workers' Compensation Laws

 The Pennsylvania Workers' Compensation Act, Pa. Stat. Ann. tit. 77, §§ 1–2626, provides for entitlement to benefits in broad terms:

Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence[:] ... Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law ...; and no compensation shall be paid if ... injury or death of employes results solely from military activities of the armed forces of the United States ... [or] a foreign power. In cases where the injury or death is

caused by intoxication, no compensation shall be paid if the injury or death would not have occurred but for the employe's intoxication....

*Id.* § 431. Thus, an employee injured in the course of employment is entitled to workers' compensation benefits unless the injury was caused by one of the enumerated exceptions: self-infliction, the employee's illegal activities, military activities, or intoxication. *See id.; see also id.* § 411(1) (defining compensable injury as one "arising in the course of his employment"); *Krawchuk v. Phila. Elec. Co.*, 497 Pa. 115, 439 A.2d 627, 630 (1981) ("A straight forward reading of the Act demonstrates there are only two requirements for compensability—(1) that the injury arose in the course of employment and (2) that the injury was related to that employment.").

However, the statutory scheme permits the employer to avoid periodic payments of benefits to employees in certain circumstances. This section, titled "[s]ubrogation of employer to rights of employee against third persons," provides, in pertinent part, as follows:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe ... and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

PA. STAT. ANN. tit. 77, § 671. Under this provision, the employer enjoys a right to receive the proceeds of any recovery against a third party held liable for the employee's injuries. *Id.; see also Thomp-* *son v. W.C.A.B.*, 566 Pa. 420, 781 A.2d 1146, 1152 (2001) ("[T]he employer's subrogation rights are statutorily absolute...."). To the extent that this recovery exceeds the workers' compensation benefits "payable" to the employee through the duration of the injury, an equal amount must be disbursed by the employer to the employee as an "advance payment of any future installments of compensation." PA. STAT. ANN. tit. 77, § 671. Following this lump-sum payment, the employer is released from further obligation to make periodic benefit payments until the advanced amount is exhausted. *See id.*

The subrogation rights embodied in section 671 do not extinguish the employee's entitlement to workers' compensation benefits, but, rather, limit only the employee's right to retain the proceeds of a third-party recovery. The payment contemplated by this section is not a refund of the recovery proceeds but is an "advance" of workers' compensation benefits. *Id.* After the advanced benefit payments have been exhausted, the employer must resume making periodic workers compensation benefits. *Id.* In other words, the subrogation right alters neither the employer's obligation to provide workers' compensation benefits nor the employee's entitlement to those benefits.

### C. *Conclusion*

Under Pennsylvania law, an injured employee remains eligible for workers' compensation after a third-party recovery and, in fact, enjoys a right to an immediate lump-sum payment of benefits to the extent of the recovery. Plaintiff in this case is not only still "eligible" for benefits, he actually received them in the form of a lump sum. Thus, defendant acted properly in continuing to offset these benefits against those available under the employee

benefit plan, and the court will grant summary judgment in favor of defendant.

An appropriate order will issue.

## *ORDER*

AND NOW, this 25th day of November, 2003, upon consideration of the cross-motions for summary judgment (Docs. 19, 22), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 22) is DENIED.

2. Defendant's motion for summary judgment (Doc. 19) is GRANTED.

3. The Clerk of Court shall enter JUDGMENT in favor of defendant and against plaintiff and shall CLOSE this file.